**Willie YIP, Petitioner–Plaintiff,**

v.

**The FEDERAL BUREAU OF PRISONS, Harley G. Lappen, in his official capacity as Director of the Federal Bureau of Prisons, and Michael A. Zenk, in his official capacity as Warden of the Federal Correctional Institution—Metropolitan Detention Center, Respondents–Defendants.**

**No. 05 CV 1314(NG).**

United States District Court, E.D. New York.

April 1, 2005.

J. Bruce Maffeo, New York, NY, for Petitioner–Plaintiff.

David Corwin James, U.S. Attorneys Office, Brooklyn, NY, for Respondents–Defendants.

### *OPINION & ORDER*

GERSHON, District Judge.

In this case, brought under 28 U.S.C. §§ 2241 and 1361, petitioner-plaintiff Willie Yip ("petitioner") moves for injunctive relief, by Order to Show Cause, pursuant to Federal Rule of Civil Procedure 65. Specifically, petitioner seeks to compel the respondents-defendants "to make a determination immediately as to his eligibility for pre-release designation to a Community Corrections Center ('CCC') or halfway house, pursuant to the BOP's pre-December 20, 2002 rules, regulations, policies, practices, procedures and criteria." The government opposes the motion and seeks dismissal of the petition. For the reasons discussed below, petitioner's motion is denied and the petition is dismissed.

### *Background*

This case is one of many actions that have resulted from a December 20, 2002 change in Bureau of Prison's ("BOP") policy regarding transfer to halfway houses. *See, e.g., Pinto v. Menifee*, 04–CV–5839, 2004 WL 3019760 (S.D.N.Y. Dec.29, 2004)

at \*4 (collecting cases). Prior to December, 20, 2002, the policy of the BOP was to transfer eligible inmates to CCCs for the last six months of their sentences, without regard for what percentage of an inmate's sentence had been served. This policy was based on the BOP's interpretation of two statutes, 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c). Section 3621(b) states, in part:

The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence—(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28. In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

Section 3624(c) provides, in part, that:

The Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last ten per centum of the term to be served under conditions that will afford a prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

On December 20, 2002, the BOP changed its policy with regard to transfer to CCCs, based on a new interpretation of these statutes. The policy adopted in December of 2002 dictated that inmates would be eligible for transfer to a CCC for the lesser of the final six months of their sentence or the final 10% of their sentence. This policy was based on the BOP's conclusion that it did not have the authority to transfer inmates prior to the 10% point identified in Section 3624(c). After numerous suits challenging this policy, the BOP adopted a third policy on February 14, 2005, which provides:

Because various courts have held that the Bureau has discretion under 18 U.S.C. § 3621(b) to place offenders sentenced to a term of imprisonment in CCCs, the Bureau considers it prudent to determine how to exercise such discretion. Accordingly, the Bureau has considered how to exercise that discretion in a manner consistent with the text of Section 3621(b), Congressional objectives reflected in related statutory provisions, and the policy determinations of the U.S. Sentencing Commission expressed in the U.S. Sentencing Guidelines. Based on those considerations, the Bureau has determined to exercise its discretion categorically to limit inmates' community confinement to the

last ten percent of the prison sentence being served, not to exceed six months. This categorical exercise of discretion is permissible based on the Supreme Court's recognition that, even when a statutory scheme requires individualized determinations, the decisionmaker has authority to rely on rulemaking to resolve certain issues of general applicability (unless Congress clearly expresses an intent to withhold that authority). *See Lopez v. Davis,* 531 U.S. 230, 243–44, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001); *American Hospital Association v. NLRB,* 499 U.S. 606, 612–13, 111 S.Ct. 1539, 113 L.Ed.2d 675 (1991). The Bureau will continue to make a case-by-case determination of the particular prison facility (i.e., non-community-confinement facility) to which it will designate each individual inmate.

69 Fed.Reg. at 51213.

Petitioner is currently serving a thirty month sentence at the Metropolitan Detention Center ("MDC") in Brooklyn, New York. Under the BOP policy prior to December 20, 2002, petitioner would have been eligible for transfer to a CCC on April 22, 2005. Under either the December 20, 2002 rule or the February 14, 2005 rule, he is ineligible until July 22, 2005.

#### Discussion

■ Petitioner brings this action under 28 U.S.C. §§ 2241 and 1361. As petitioner seeks to compel the BOP to perform a duty he believes is owed to him, and as he does not allege that he is currently illegally confined, the court will treat this action as one for mandamus, under Section 1361. Petitioner thus must demonstrate: "(1) a clear right ... to the relief sought; (2) a plainly defined and peremptory duty on the part of the [respondent] to do the act in question; and (3) [that there is] no other adequate remedy available." *Anderson v. Bowen,* 881 F.2d 1, 5 (2d Cir.1989) (quoting *Lovallo v. Froehlke,* 468 F.2d 340, 343 (2d Cir.1972)). Petitioner argues that the illegality of subsequent policies renders the pre-December 20, 2002 policy applicable, and that he therefore has a right to the relief sought.

### A. The December 20, 2002 Policy

■ Petitioner's challenge to the December 20, 2002 policy has been mooted by the adoption of the February 14, 2005 policy. Petitioner does not dispute that the February 14, 2005 policy was adopted after an appropriate notice and comment period, pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 551–559. *See* 70 Fed.Reg. 1659–01 (Jan. 10, 2005). The crux of petitioner's challenge is that the 2002 policy incorrectly assumed that the BOP did not have authority to transfer inmates to CCCs prior to the completion of 90% of their sentence. The new policy, which governs petitioner's case, assumes that the BOP does have this authority under 18 U.S.C. § 3621(b), but categorically declines to exercise it. Since petitioner's transfer date has yet to be calculated, the February 14, 2005 policy is applicable, and this policy repairs the principal defect petitioner asserts in the 2002 policy.

### B. The February 14, 2005 Policy

Petitioner acknowledges the applicability of the February 14, 2005 policy in his reply papers, but argues that his claims against respondents remain since the new policy is contrary to statute and is an unreasonable exercise of the BOP's discretion.

■ Petitioner argues that the February 14, 2005 policy is in conflict with the "explicit mandate" of 18 U.S.C. § 3621(b). As this court has previously held, that the BOP is authorized to consider petitioner for transfer to a CCC does not confer on

petitioner a right to that consideration prior to his ten percent date. *See Sanchez v. United States of America,* 04–CV–1789 at 3 (E.D.N.Y. April 30, 2004) (Gershon, J.) ("the *ability* of the BOP to consider petitioner for home confinement prior to his ten percent date does not confer on petitioner a *right* to that consideration or to home confinement prior to his ten percent date."). Thus, the court does not agree that Section 3621(b) confers upon petitioner a right to be considered immediately for transfer to a halfway house.

Petitioner next argues, because of the requirement embodied in Section 3621(b) that the BOP make individual determinations, the BOP did not have authority to create a rule which categorically declined to exercise discretion to transfer to CCCs, because of the requirement embodied in Section 3621(b) that the BOP make individual determinations.

■ First, assuming *arguendo* that there were a requirement that the BOP make individual determinations when transferring inmates, it would apply only when the BOP has elected to consider whether to make a transfer. Nothing in Section 3621(b) requires the BOP to consider transferring any inmate under its custody prior to the point identified in 18 U.S.C. 3624(c).

■ Second, contrary to petitioner's assertion, the BOP is authorized to create categorical rules even where a statute requires individualized determinations. *See Lopez v. Davis,* 531 U.S. 230, 243–244, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001) ("[E]ven if a statutory scheme requires individualized determinations ... the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority.") (internal quotation marks omitted) (quoting *American Hospital Assn. v. NLRB,* 499 U.S. 606, 612, 111 S.Ct. 1539, 113 L.Ed.2d

675 (1991)). In *Lopez,* the Supreme Court rejected a challenge to the BOP's creation of a categorical rule excluding certain inmates from a discretionary early release program. There is no significant distinction between the situation in *Lopez* and the case at hand. The BOP has identified a category of prisoners—inmates who are not yet required to be considered for transfer to a CCC under Section 3624(c), but are eligible under Section 3621(b)— and created a rule denying transfer to all of them, in conflict with no identified directive of Congress. Thus, the court disagrees with the conclusion of *Drew v. Menifee,* 04–CV–9944, 2005 WL 525449 at *4–*5 (S.D.N.Y. March 4, 2005), relied upon by petitioner, and concludes that there is no merit to petitioner's contention that the BOP was not authorized to create this type of categorical rule.

*Conclusion*

As petitioner has failed to demonstrate that he "has a clear right to the relief sought," his motion for a writ of mandamus is denied and the petition is dismissed.

**SO ORDERED.**